**L. Grant Foster, 7202**
gfoster@hollandhart.com
**Brett L. Foster, 6089**
bfoster@hollandhart.com
**Mark A. Miller, 9568**
mmiller@hollandhart.com
HOLLAND & HART LLP
60 East South Temple, Suite 2000
Salt Lake City, Utah 84111-1031
Telephone: (801) 799-5800
Facsimile: (801) 799-5700

*Attorneys for Plaintiff*
Easton Technical Products, Inc.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **EASTON TECHNICAL PRODUCTS, INC.**, a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**FIRENOCK, LLC**, an Illinois corporation, and **DORGE O. HUANG**, an individual,<br><br>Defendants. | **AMENDED COMPLAINT**<br><br>Civil Case No. 2:07-cv-559<br><br>Judge: Ted Stewart<br><br>**Jury Demanded** |

Plaintiff Easton Technical Products, Inc., by and through counsel, alleges and complains against Defendants Firenock, LLC and Dorge O. Huang (collectively "Defendants") as follows:

### THE PARTIES

1. Plaintiff Easton Technical Products, Inc. ("Easton" or "Plaintiff") is a Utah corporation having its principal place of business in Salt Lake City, Utah.

2. Upon information and belief, Defendant Firenock, LLC ("Firenock") is an Illinois corporation having a place of business at 615 Gateway Drive, Henry, Illinois, 61537. Upon information and belief, Firenock makes, offers for sale, sells, and distributes lighted arrow nock products throughout the United States, including this judicial district.

3. Upon information and belief, Defendant Dorge O. Huang ("Huang") is an individual currently residing at 615 Gateway Drive, Henry, Illinois, 61537. Upon information and belief, Huang is the sole owner and operator of Firenock, and transacts or has transacted business relating to lighted arrow nock products throughout the United States, including this judicial district.

4. The lighted arrow nock products made and sold by Defendants, as further discussed below, are especially designed and made by Defendants to be used in a manner that directly infringes the subject patent, U.S. Patent No. 6,390,642, throughout the United States, including this judicial district.

**JURISDICTION AND VENUE**

5. This is an action for patent infringement under 35 U.S.C. § 271. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

6. This Court has personal jurisdiction over Defendants because they have transacted business relating to the subject matter of this lawsuit in Utah and have, thereby, caused damage to Easton in Utah. Specifically, personal jurisdiction over Defendants is proper due to their infringing activities in and directed to the State of Utah, including the sale, offering for sale, and/or advertising of the infringing lighted arrow nock products in Utah.

7. Venue is proper in the District of Utah pursuant to 28 U.S.C. § 1391.

**GENERAL ALLEGATIONS**

8. United States Patent No. 6,390,642 ("the '642 patent"), entitled "Tracer Light For Archer's Arrow," is a valid and enforceable United States patent, which issued on May 21, 2002 to inventor Robert Wayne Simonton ("Simonton"). A copy of the '642 patent is attached as Exhibit A.

9. The '642 patent discloses and claims an archery bow and arrow system that utilizes a magnetically-actuated lighted nock assembly in the tail of the arrow to enable the archer to better follow and find the arrow after shooting.

10. Simonton has sold his patented magnetically-actuated arrow nock products under the brand name Tracer through his Internet website www.tracerarrow.com.

11. In June 2004, Huang posted a comment on the Archery Talk website under the username "osomemac" discussing his purchase of Simonton's Tracer lighted nock products as follows: "the best $20.00 I have spend is on 2 lighted nocks. But it end up costing me a lot more since I like it so much I have it on all of my arrows now." Huang's posting included a link to Simonton's Tracer website. A copy of Huang's 2004 Internet posting is attached as Exhibit B.

12. Defendants began making, using, selling, and/or offering to sell Firenock brand lighted nock products in the Fall of 2006. Defendants' Firenock products were magnetically-actuated and especially designed and made to be used with an arrow and an archery bow in a manner that directly infringes one or more claims of the '642 patent.

13. In October 2006, Huang again posted a comment on the Archery Talk website, this time promoting his new Firenock lighted nock products as follows: "Have any one of you

3

heard of Firenock?  I believe it is the best lighted nock in the market.  Anyone tried it?"  A copy of Huang's October 2006 Internet posting is attached as Exhibit C.

14.     Various other archers posted responses to Huang's statement, including the following: "looks to be the same as the Tracer nocks…except more $$$" and "I thought this was going to be something new but I was wrong.  I use Tracer Nocks and see very little difference in function or weight."  (Ex. C).

15.     In September 2006, Simonton expressed his frustration and disappointment to Huang for Huang's decision to infringe the '642 patent.  In response, Huang apologized and acknowledged that his lighted nock products embodied Simonton's "idea" and were "rightfully" the property of Simonton.  Huang offered to purchase the '642 patent with "no money up front," which Simonton rejected.  A copy of this September 2006 communication is attached as Exhibit D.

16.     On November 2, 2006, Simonton's attorney sent Huang a demand letter acknowledging Huang's admission "to Mr. Simonton that [Huang's] *Firenock* lighted nock arrow assembly infringes the claims of his '642 patent" and demanding that Huang immediately cease selling and advertising the Firenock products.  A copy of this letter is attached as Exhibit E.

17.     Huang refused to comply with Simonton's demands to respect his patent rights.

18.     On December 1, 2006, Simonton sued Huang for infringement of the '642 patent in the United States District Court for the Western District of Texas (case no. 5:06-cv-1050) based on Huang's use and sale of Firenock lighted arrow nock products referred to as Firenock versions 1.0 and 1.1.

4

3761704_1.DOC

heard of Firenock?  I believe it is the best lighted nock in the market.  Anyone tried it?"  A copy of Huang's October 2006 Internet posting is attached as Exhibit C.

14.     Various other archers posted responses to Huang's statement, including the following: "looks to be the same as the Tracer nocks…except more $$$" and "I thought this was going to be something new but I was wrong.  I use Tracer Nocks and see very little difference in function or weight."  (Ex. C).

15.     In September 2006, Simonton expressed his frustration and disappointment to Huang for Huang's decision to infringe the '642 patent.  In response, Huang apologized and acknowledged that his lighted nock products embodied Simonton's "idea" and were "rightfully" the property of Simonton.  Huang offered to purchase the '642 patent with "no money up front," which Simonton rejected.  A copy of this September 2006 communication is attached as Exhibit D.

16.     On November 2, 2006, Simonton's attorney sent Huang a demand letter acknowledging Huang's admission "to Mr. Simonton that [Huang's] *Firenock* lighted nock arrow assembly infringes the claims of his '642 patent" and demanding that Huang immediately cease selling and advertising the Firenock products.  A copy of this letter is attached as Exhibit E.

17.     Huang refused to comply with Simonton's demands to respect his patent rights.

18.     On December 1, 2006, Simonton sued Huang for infringement of the '642 patent in the United States District Court for the Western District of Texas (case no. 5:06-cv-1050) based on Huang's use and sale of Firenock lighted arrow nock products referred to as Firenock versions 1.0 and 1.1.

19. Following several months of litigation proceedings and negotiations, on July 6, 2007, Simonton filed an Unopposed Motion for Entry of Agreed Permanent Injunction in the Western District of Texas indicating that Huang and Simonton had "agreed to the entry of a permanent injunction enjoining the Defendant from any manufacture of certain products that, according to Simonton, allegedly infringe U.S. Patent No. 6,390,642." The Unopposed Motion included an "Agreed Permanent Injunction" signed by Huang on July 5, 2007. A copy of the Unopposed Motion is attached as Exhibit F.

20. The Western District of Texas entered the Agreed Permanent Injunction against Huang on July 17, 2007 prohibiting him from "making, using, selling, or offering to sell Firenock versions 1.0 and 1.1." A copy of the Permanent Injunction is attached as Exhibit G.

21. Easton purchased the '642 patent from Simonton in May 2007.

22. Thereafter, Easton learned that despite the foregoing history, the Agreed Permanent Injunction, and Defendants' knowledge of and familiarity with the '642 patent, Defendants continued to make, use, offer for sale, and/or sell magnetically-actuated lighted arrow nock products and accessories that are especially designed and made to be used with an arrow and an archery bow in a manner that directly infringes one or more claims of the '642 patent. Specifically, the following products are or have been made, used, sold, and/or offered for sale by Defendants and are especially designed to be used in a manner that directly infringes one or more claims of the '642 patent:

- o Firenock version 1.2
- o Firenock version 1.5
- o Firenock version 2.0s
- o Firenock version 2.0a
- o Firenock version 2.0e

- Firenock version 2.0c
- Lightning Nock version 2.0s
- Lightning Nock version 2.0c
- Lightning Nock version 2.01s
- Actuator Magnet Pack
- Actuator Bracket for Whisker Biscuit Arrow Rest
- Actuator Bracket for Trophy Taker Arrow Rest
- Extreme Shock Battery End Cap Pack
- Universal Refresh Pack
- Matched Weight Practice Nock
- Knock Proof Pack

Hereafter, the above listed products and accessories, and any derivatives thereof, are collectively referred to as the "infringing products."

23. The infringing products are not materially different from Firenock versions 1.0 and 1.1 in any way that would avoid infringing one or more claims of the '642 patent.

24. On August 2, 2007, Easton sent Huang a letter demanding that Defendants immediately cease and desist from selling the infringing products. A copy of this letter is attached as Exhibit H.

25. Thereafter, Huang contacted Easton to express his desire to find a way for he and Easton to work together and avoid litigation, but indicating that stopping the sales of his Firenock products was not an option.

26. In subsequent conversations, Huang unequivocally informed Easton that he did not see a way to compromise, that he would continue selling his infringing products despite Easton's demands, and that he knew how to deliberately delay litigation by seeking deadline extensions and appealing to the Court's sympathy for *pro se* parties.

27.     At no time has Easton or Simonton given Defendants permission, license, or any other authorization to make, use, offer to sell, or sell the novel and inventive technology covered by the claims of the '642 patent.

28.     At no time has Easton or Simonton given Defendants permission, license, or any other authorization to contribute to or induce the making, using, offering to sell, or selling of the novel and inventive technology covered by the claims of the '642.

## FIRST CAUSE OF ACTION

### Patent Infringement Under 35 U.S.C. § 271(a) and (b)

29.     Easton re-alleges and incorporates by this reference the preceding allegations of this Complaint.

30.     Defendants' use of the infringing products with arrows and archery bows constitutes direct infringement of one or more claims of the '642 patent under 35 U.S.C. § 271(a).

31.     Firenock and Huang actively induced others to use the infringing products in a manner that directly infringes the '642 patent by selling the infringing products and providing clear, explicit instructions for using the infringing products in a manner that directly infringes one or more claims of the '642 patent.

32.     By following Defendants' explicit instructions regarding the use of the infringing products, the end users of Defendants' infringing products are directly infringing one or more claims of the '642 patent.

33.     Firenock and Huang intended to cause these acts, which they knew or should have known would induce direct infringement of the '642 patent by others.

7

34. Defendants' actions as described above, and specifically Defendants' intentional and active inducement of others to use the infringing products in a manner that directly infringes one or more claims of the '642 patent constitutes induced infringement under 35 U.S.C. § 271(b).

35. Despite having knowledge of the '642 patent, Defendants have continued and will likely continue to willfully and deliberately engage in acts of infringement of the '642 patent unless preliminarily and permanently enjoined by this Court.

36. Defendants' continued actions of making, using, importing, selling, offering for sale, and/or distributing the infringing products has injured, is injuring, and will cause irreparable injury to Easton if not preliminarily and permanently enjoined.

37. Easton is entitled to an injunction prohibiting Defendants from further making, using, selling, or offering to sell the infringing products without permission or license from Easton under 35 U.S.C. § 283.

38. Easton is entitled to recover all damages caused by Defendants' direct and induced infringement under 35 U.S.C. § 284.

39. Defendants' continued manufacture, use, offers for sale, and sales of the infringing products as outlined above demonstrate a deliberate and conscious decision to infringe the '642 patent or, at the very least, a reckless disregard of Easton's patent rights, and constitute a willful infringement of the '642 patent. Easton is, therefore, entitled to treble damages and attorneys' fees and costs incurred in this action, along with prejudgment interest under 35 U.S.C. §§ 284, 285.

## SECOND CAUSE OF ACTION

## Patent Infringement Under 35 U.S.C. § 271(c)

40. Easton re-alleges and incorporates by this reference the preceding allegations of this Complaint.

41. The infringing products are not staple articles or commodities of commerce and are not suitable for substantial noninfringing uses. Rather, the infringing products are designed, made, and suitable for one specific use, which use directly infringes one or more claims of the '642 patent.

42. By following Defendants' explicit instructions regarding the use of the infringing products, the end users of Defendants' infringing products are directly infringing one or more claims of the '642 patent.

43. In making, offering for sale, and selling the infringing products, Defendants intended for the infringing products to be used with arrows and archery bows in a manner that they knew or should have known directly infringes one or more claims of the '642 patent.

44. In making, offering for sale, and selling the infringing products, Defendants knew or should have known that the infringing products are not suitable for substantial noninfringing uses.

45. Defendants' actions as described above, and specifically Defendants' unauthorized offering for sale and selling of the infringing products constitutes contributory infringement of the '642 patent under 35 U.S.C. § 271(c).

46. Despite having knowledge of the '642 patent, Defendants have continued and will likely continue to willfully and deliberately engage in acts of infringement of the '642 patent unless preliminarily and permanently enjoined by this Court.

47. Defendants' continued actions of making, using, importing, selling, offering for sale, and/or distributing the infringing products has injured, is injuring, and will cause irreparable injury to Easton if not preliminarily and permanently enjoined.

48. Easton is entitled to an injunction prohibiting Defendants from further making, using, selling, or offering to sell the infringing products without permission or license from Easton under 35 U.S.C. § 283.

49. Easton is entitled to recover all damages caused by Defendants' contributory infringement under 35 U.S.C. § 284.

50. Defendants' continued manufacture, use, offers for sale, and sales of the infringing products as outlined above demonstrate a deliberate and conscious decision to infringe the '642 patent or, at the very least, a reckless disregard of Easton's patent rights, and constitute a willful infringement of the '642 patent. Easton is, therefore, entitled to treble damages and attorneys' fees and costs incurred in this action, along with prejudgment interest under 35 U.S.C. §§ 284, 285.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief and requests that:

a. the Court enter a temporary restraining order and/or preliminary injunction against Defendants enjoining them, including all officers, directors, principals, agents, servants, employees, successors and assigns, and all others aiding, abetting, or acting in

concert or active participation therewith, from making, using, selling, and offering to sell the infringing products;

  b. the Court enter judgment against Defendants for direct, contributory, and induced infringement of the '642 patent under 35 U.S.C. § 271;

  c. the Court grant permanent injunctive relief enjoining Defendants, including all officers, directors, principals, agents, servants, employees, successors and assigns, and all others aiding, abetting, or acting in concert or active participation therewith, from making, using, selling, and offering to sell the infringing products;

  d. the Court order that Defendants account to Plaintiff for all sales revenues and profits derived from the sale of the infringing products, and that Defendants pay to Plaintiff all compensatory damages to which Easton is entitled by law, including without limitation lost profits, reasonable royalties, price erosion damages, and convoyed sales damages.

  e. the Court award Plaintiff three times the damages found in accordance with subparagraph (c) above pursuant to 35 U.S.C. § 284;

  f. the Court award Plaintiff, against Defendants, the costs of this action and reasonable attorneys' fees and expenses pursuant to 35 U.S.C. § 285 and the equity powers of the Court;

  g. the Court award Plaintiff prejudgment interest against Defendants on all sums allowed by law;

  h. the Court award Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Easton demands that all claims or causes of action raised in this Complaint be tried by a jury to the fullest extent possible under the United States Constitution.

DATED this 17th day of September, 2007.

> HOLLAND & HART LLP
>
> /s/ Mark A. Miller
> L. Grant Foster
> Brett L. Foster
> Mark A. Miller
> *Attorneys for Plaintiff*
> Easton Technical Products, Inc.